Larry Gene HULL, Appellee,

v.

Robert M. FREEMAN; Ernest D. Preate, Jr., Attorney General, Appellants.

No. 90–5900.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) March 6, 1991.

Decided May 10, 1991.

**160**

John F. Nelson, Dist. Atty., Chambersburg, Pa., for appellant.

James V. Wade, Federal Public Defender, Harrisburg, Pa., for appellee.

Before BECKER, NYGAARD and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal from an order of the district court "provisionally" granting Larry Gene Hull's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Hull is presently serving a sentence of life imprisonment for murder in the first degree, which was imposed by the Court of Common Pleas of Franklin County (Pennsylvania) following Hull's plea of guilty in 1979. Hull filed the instant habeas petition in the United States District Court for the Middle District of Pennsylvania contending, *inter alia*, that he had received ineffective assistance of counsel at the July, 1979 competency hearing held prior to his plea of guilty. More specifically, he asserts that his trial attorney's performance at the competency hearing was deficient because counsel failed to cross-examine the Commonwealth's psychiatrist and to call witnesses on his behalf. Hull contends that as a result of this inadequate representation, he was permitted to plead guilty to murder while in an incompetent state.

On July 13, 1990, the district court filed an opinion in which it seemed to agree that Hull had received ineffective assistance of counsel during the July, 1979 competency hearing. On September 11, 1990, the court entered an order "provisionally" granting the writ and remanding the matter to the state court for the purpose of holding a hearing to re-determine Hull's competency as of July, 1979.[1] The District Attorney of Franklin County, representing the Commonwealth of Pennsylvania, now appeals this order.

This appeal presents, as a preliminary matter, interesting questions of appellate jurisdiction, exhaustion of state remedies, and procedural default. We address the latter issue at some length because it appears that one of our important decisions in this area, *Bond v. Fulcomer*, 864 F.2d 306 (3d Cir.1989), has been effectively overruled by the Supreme Court's decision in *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Ultimately, we decide that these three threshold issues do not present a bar to our reaching the merits of the Commonwealth's appeal.

On the merits, the Commonwealth contends that the district court erred in holding that Hull received constitutionally ineffective assistance of counsel at the 1979 competency hearing. Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant claiming ineffective assistance must show (1) that counsel's performance was deficient and (2) that he or she was prejudiced by counsel's error. The district court, however, neglected to bifurcate its *Strickland* discussion along these lines, somewhat obscuring its analysis. Although we are confident that the district court found that the first prong of *Strickland* has been met (and we en-

---

1. The district court's order (dated September 11th) provides that Hull is to be released unless the Franklin County Court of Common Pleas conducts a new competency hearing within 60 days. If, at the hearing, the Common Pleas Court determines that Hull was *incompetent* in July of 1979, then the order provides that Hull's August, 1979 guilty plea is to be vacated and the Commonwealth is permitted the opportunity to either retry Hull or otherwise dispose of the 1975 murder charge within 120 days. Finally, if, at the hearing, the Common Pleas Court determines that Hull was *competent* in July of 1979, then the order provides that Hull's federal habeas petition is to be dismissed.

dorse that conclusion), we are unsure whether the district court actually held that Hull was prejudiced by his trial counsel's deficient performance. We think that the district court's opinion, when read in conjunction with its accompanying orders, admits of two plausible (and legally problematic) constructions.

On the one hand, the district court might have found that Hull has satisfied only the first prong of *Strickland* and that an evidentiary hearing is necessary to determine whether Hull was prejudiced by counsel's errors—i.e., whether there is a reasonable probability that Hull would have been found incompetent at the July, 1979 competency hearing but for counsel's deficient performance. If this interpretation is correct, however, the district court should have conducted the evidentiary hearing itself, *see Keller v. Petsock*, 853 F.2d 1122 (3d Cir.1988), rather than remand the matter to the state court. On the other hand, in view of the tenor of its opinion (notwithstanding the tenor of its September 11th order, which seems to cut the other way), the district court arguably found that Hull has satisfied both prongs of *Strickland*. If this interpretation is correct, however, the district court should have vacated Hull's guilty plea, rather than order a hearing to determine Hull's competency as of July 1979. Because we are unsure of the legal significance of the district court's decision, we will vacate the order of the district court and remand this case for clarification and further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Hull was charged in 1975 with the murder of Lloyd Shatzer. At a preliminary hearing held on March 7, 1975, the Franklin County Court of Common Pleas found Hull incompetent to stand trial and committed him to Farview State Hospital. Hull remained at Farview until another competency hearing was held on July 31, 1979. At that hearing, Dr. Harry Stamey, a psychia-

trist and the Commonwealth's only witness, testified that he believed Hull to be competent to stand trial based on his examination of Hull on April 20, 1979. Hull's attorney neither cross-examined Dr. Stamey nor presented witnesses on Hull's behalf, notwithstanding that two different attending psychiatrists at Farview, Dr. Kenneth Detrick and Dr. Lawrence Chang, recently had found Hull to be incompetent to stand trial. Counsel's failure to call Dr. Detrick as a witness is particularly striking because Dr. Detrick had examined Hull on April 9, 1979, just eleven days before Dr. Stamey's examination, and had concluded that Hull remained incompetent to stand trial. Not surprisingly, the Court of Common Pleas accepted Dr. Stamey's unrebutted testimony and on July 31, 1979, determined that Hull was competent to stand trial.

After Hull was found to be competent, a trial was scheduled for September 10, 1979, on the 1975 murder charge. On August 3, 1979, however, Hull entered a plea of guilty to murder generally. A degree of guilt hearing was then held on August 31, 1979, at which the Court of Common Pleas found Hull guilty of murder in the first degree and imposed a sentence of life imprisonment. After Hull's motion to modify the sentence was denied on September 28, 1979, Hull appealed the sentencing decision of the Court of Common Pleas to the Pennsylvania Supreme Court. On September 24, 1981, the Pennsylvania Supreme Court affirmed the trial court's judgment of sentence, 495 Pa. 644, 435 A.2d 1204.

Meanwhile, Hull had begun his quest to secure collateral relief under Pennsylvania's Post Conviction Hearing Act ("PCHA"), 42 Pa.Con.Stat.Ann. § 9541 *et seq.*[2] On January 19, 1981, Hull filed a PCHA petition with the Court of Common Pleas, which the District Attorney claimed (and Hull now concedes) was premature. On July 18, 1986, after Hull's appeal from the trial court's judgment of sentence was rejected by the Pennsylvania Supreme

---

**2.** The Post Conviction Hearing Act was amended in 1988 and replaced with the Post Conviction Relief Act, 42 Pa.Con.Stat.Ann. §§ 9541–46.

Court, and his motion for modification of sentence (dated July 7, 1986) was denied as well, Hull filed an amended PCHA petition, which was ordered consolidated with his pending petition.

Hull's consolidated PCHA petition essentially raised the following four issues:

(1) Whether trial counsel was ineffective for failing adequately to pursue the issue of defendant's competency to stand trial at the proceedings held in 1979, wherein defendant was arraigned, entered a guilty plea, underwent a degree of guilt hearing and was sentenced;

(2) Whether trial counsel was ineffective for failing to pursue the issues of defendant's alleged diminished capacity through the production of expert and lay testimony;

(3) Whether defendant's rights were violated by a failure to apprise him adequately of the *Miranda* warnings; and

(4) whether defendant's guilty plea was coerced.

After holding hearings on July 21, 1987, and on November 9, 1987, the Court of Common Pleas denied Hull's PCHA petition, rejecting all post-conviction claims of error. Hull then appealed the trial court's denial of his PCHA petition to the Pennsylvania Superior Court. His brief to the Superior Court, however, raised only one of the above four issues—namely, the purported ineffectiveness of trial counsel at the July, 1979 competency proceeding. On September 30, 1988, the Superior Court affirmed the trial court's resolution of the ineffectiveness issue. Subsequently, Hull's counsel failed to file a timely petition for allocatur with the Pennsylvania Supreme Court. Once Hull learned of his counsel's failure to appeal, he petitioned *pro se* for allocatur *nunc pro tunc*. This petition was denied without comment by order of the Pennsylvania Supreme Court dated February 21, 1989.

On May 8, 1989, Hull filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the district court for the Middle District of Pennsylvania. In his petition, Hull alleged that his trial counsel was ineffective for failing to pursue adequately the issue of his competency to stand trial in 1979. He also averred that his lawyer had neglected to press vigorously certain *Miranda* and coerced plea issues. Hull's petition was referred to a United States Magistrate Judge for preliminary consideration. In a report dated December 26, 1989, the magistrate judge recommended that Hull's habeas petition be dismissed with respect to the *Miranda* and coerced plea claims due to state procedural defaults—i.e., Hull's failure to raise these claims in his PCHA appeal to the Pennsylvania Superior Court.

On review, the district court adopted the magistrate judge's recommendation regarding these two claims and remanded the case for further proceedings on the issue of whether Hull's counsel was ineffective at the July, 1979 competency hearing (the "competency issue"). In his final report, the magistrate judge determined that Hull had exhausted his state-court remedies with respect to the competency issue. On the merits of Hull's petition, however, the magistrate judge recommended that the writ be dismissed, concluding:

Since it would appear that the testimony of Dr. Stamey, the colloquy during the August 3, 1979 hearing, and the subsequent report of Dr. Sadoff would support the superior court's finding that petitioner was competent to stand trial, even though counsel might have launched a more searching inquiry, it does not appear that counsel was ineffective.

Pursuant to Local Rule 904.2, Hull filed objections to the magistrate judge's report with the district court.

On July 13, 1990, the district judge, reviewing *de novo* the magistrate judge's report, determined that Hull had received ineffective assistance of counsel at the July, 1979 competency hearing. The district court noted that Hull had been *heavily* medicated throughout August of 1979, the month in which Hull pleaded guilty and was sentenced to life imprisonment. In addition, the district court observed, several of Hull's remarks during the August 3, 1979, arraignment bordered on nonsensical. Most importantly, the district court ex-

pressed utter dismay over trial counsel's decision at the July, 1979 competency hearing to neither cross-examine the Commonwealth's sole witness nor present any rebuttal evidence. The district court concluded that "[t]he failure of Hull's attorney to cross examine the state's expert or call witnesses on behalf of Hull at the competency hearing on July 31, 1979, indicates that Hull was denied a full and fair competency hearing."

The district court's accompanying order "granted" Hull's petition for writ of habeas corpus and required that a new evidentiary hearing be held on Hull's competency to stand trial, but instructed the parties to attempt to agree on a proposed form of order. On September 11, 1990, the district court entered a second order (the "September 11th Order"), which "provisionally" granted Hull's petition for writ of habeas corpus and remanded the matter to the Franklin County Court of Common Pleas for the purpose of holding a hearing to determine Hull's competency as of July, 1979. *See supra* n. 1. The Commonwealth filed a timely notice of appeal from this order on September 28, 1990.

## II. DISCUSSION

### A. *Appellate Jurisdiction*

■ Upon initial review of this appeal, we asked counsel to address the issue of appellate jurisdiction in light of our decisions in *Marshall v. Lansing*, 839 F.2d 933, 940–41 (3d Cir.1988) (order remanding to administrative agency for further litigation is not final because "in habeas proceedings, the district court has not finally disposed of a case until it either grants or denies the writ"), and *United States ex rel. Fielding v. Degnan*, 587 F.2d 619 (3d Cir.1978) (order granting petition for writ of habeas corpus is not final because order contemplated a subsequent hearing before the district court to determine custodial status). At that time, we were concerned that the district court's September 11th Order might not be final. Upon further review,

however, we are now confident that we do have jurisdiction to consider this ·appeal.

The courts of appeals have jurisdiction over appeals from all "final decisions" of the district courts. 28 U.S.C. § 1291. Section 2253 of Title 28 of the United States Code provides, more specifically, that the "final order" in a habeas corpus proceeding is subject to review by the court of appeals for the circuit in which the proceeding took place. It is well-settled that a district court order conditionally granting a habeas corpus petition and directing the state to discharge the petitioner unless he or she is retried within a certain number of days is "final" for purposes of sections 1291 and 2253. *See Browder v. Director, Department of Corrections of Illinois*, 434 U.S. 257, 265–66, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978); *United States ex rel. Thomas v. New Jersey*, 472 F.2d 735, 742 (3d Cir.), *cert. denied*, 414 U.S. 878, 94 S.Ct. 121, 38 L.Ed.2d 123 (1973); *cf. Heirens v. Mizell*, 729 F.2d 449, 454 (7th Cir.) (" 'A final judgment in a habeas corpus case either denies the petition or orders the· petitioner released at a specified time.' " (citation omitted)), *cert. denied*, 469 U.S. 842, 105 S.Ct. 147, 83 L.Ed.2d 85 (1984).

The September 11th Order, which "provisionally" (or conditionally) grants Hull's habeas petition, fits within the genre of orders held to be final and appealable in the above cases.[3] It directs that, if the Court of Common Pleas ultimately finds that Hull was incompetent in July of 1979, Hull shall be released from custody unless he is retried within 120 days of the state court's competency determination. *See supra* at n. 1. Although the district court's September 11th Order remanded the case to the Court of Common Pleas for the purpose of conducting a competency hearing, it remains distinguishable from the order at issue in *Fielding*. The order in *Fielding* stated that, unless a constitutional bail was set for the petitioners by the state court prior to a certain date, petitioners should reappear *in the district court* on that date "at which time the terms of the enlarge-

---

**3.** In contrast, the July 13, 1990, order is not final because it contemplated further submis-

sions from counsel before entry of a subsequent order by the district court.

ment shall be set." 587 F.2d at 620. In contradistinction, the September 11th Order by its terms does not contemplate further proceedings before the district court. It is therefore quite literally the district court's "final" order, "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945).

## B. *Exhaustion of State Remedies and Procedural Default*

■ We noted above in our recitation of the facts and procedural history that Hull, in prosecuting his PCHA petition, failed to file a timely petition for allocatur with the Pennsylvania Supreme Court. This omission, at least as an intuitive matter, prompts concerns that Hull's federal habeas claim might be either unexhausted or procedurally waived. Neither party, however, raised these issues on appeal. In view of the interests of comity and federalism that undergird these two requirements, we nonetheless will address each of them here in order to alleviate any lingering doubt regarding the propriety of federal habeas review in this case.[4]

■ The exhaustion requirement is codified at 28 U.S.C. §§ 2254(b) and (c).[5] Simply stated, these sections require a petitioner to exhaust all means of relief available under state law before filing a federal habeas petition. *See Landano v. Rafferty,* 897 F.2d 661, 668 (3d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 23 (1990). The petitioner must fairly present each of his federal claims to the state courts. *See Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). If the state courts have not had an opportunity to pass on and correct each claim of error asserted in the habeas petition, the petitioner has not complied with the exhaustion prerequisite to federal habeas relief. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Chaussard v. Fulcomer,* 816 F.2d 925 (3d Cir.), *cert. denied,* 484 U.S. 845, 108 S.Ct. 139, 98 L.Ed.2d 96 (1987). Without much elaboration, the magistrate judge's report in this case, which was adopted by the district court, held that Hull had exhausted his state remedies regarding his claim of ineffective assistance of counsel at the July, 1979 competency hearing.

In view of our decision in *Bond v. Fulcomer,* 864 F.2d 306 (3d Cir.1989), we think that the magistrate judge correctly applied the exhaustion requirement to Hull's petition. The facts in *Bond* are identical to those *sub judice:* petitioner's counsel had failed to file a timely petition for allocatur with the Pennsylvania Supreme Court; thus, petitioner filed a *pro se* petition for allowance of appeal *nunc pro tunc,* which was ultimately denied by the Pennsylvania Supreme Court without comment. The *Bond* panel held that the petitioner's mere "presentment of an untimely petition to the state's highest court represent[ed] substantial compliance with the ... exhaustion requirement." 864 F.2d at 309. Since the petitioner in *Bond* had clearly outlined his claim to the Pennsylvania Supreme Court (albeit in an untimely fashion) prior to fil-

---

**4.** "While the failure to exhaust state remedies does not deprive us of jurisdiction, [*see Granberry v. Greer,* 481 U.S. 129, 131, 107 S.Ct. 1671, 1673, 95 L.Ed.2d 119 (1987) ], it is nonetheless proper for us to raise the issue of exhaustion *sua sponte.*" *Brown v. Fauver,* 819 F.2d 395, 398 (3d Cir.1987). In addition, because a state-law procedural default can effect a bar to federal habeas review, *see Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), we think that it is appropriate for us to consider that issue *sua sponte* as well.

**5.** 28 U.S.C. § 2254 provides in pertinent part:
(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to

the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

ing his federal habeas petition, the panel concluded that the exhaustion requirement had been satisfied.[6] *Id.* at 309–10. That Hull also complied with the exhaustion rule by filing his petition for allocatur *nunc pro tunc*, in our view, follows a *fortiori* from *Bond*.

■ Although our decision in *Bond* obviates further exhaustion inquiry here, it suggests that there might be another problem with Hull's petition, namely, procedural default. The doctrine of procedural default in effect makes compliance with all relevant state-law procedural rules a precondition to federal habeas relief. In generic terms, if a defendant fails to comply with a state procedural requirement, and that failure prevents the defendant from obtaining relief on a claim of trial error from state court, then federal habeas relief on that claim is also procedurally barred absent a showing of "cause" for the default and "prejudice" attributable thereto. *Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977).[7]

In light of the Supreme Court's decision in *Sykes*, we must decide whether Hull's failure to file a timely petition for allocatur with the Pennsylvania Supreme Court constituted an adequate and independent state procedural ground barring federal habeas review in this case. Before answering this question, however, we must determine whether the Pennsylvania Supreme Court, in dismissing Hull's petition for allocatur *nunc pro tunc*, relied on procedural grounds (i.e., untimeliness) or forgave

Hull's procedural default and reached the merits of his appeal. This determination is made particularly difficult by two factors. First, the Pennsylvania Supreme Court was not precluded from reaching the merits of Hull's PCHA petition by virtue of Hull's failure to file a timely petition for allocatur. Under Pennsylvania law, a court may allow an appeal *nunc pro tunc* if the appellant establishes that the appeal was untimely as a result of "fraud or its equivalent. or a breakdown in the court's operation." *See Commonwealth v. Englert*, 311 Pa.Super. 78, 81, 457 A.2d 121, 123 (1983). That the Pennsylvania Supreme Court considered Hull's appeal on the merits therefore would not necessarily be inconsistent with Hull's contention that his appeal was untimely due to counsel's unprofessional dilatoriness. Second, we cannot discern the Pennsylvania Supreme Court's intention in denying Hull's petition for allocatur *nunc pro tunc* because the Court did so without comment. Absent any external guideposts, we are thus left to speculate whether Hull's petition was denied on the merits or on procedural grounds.

The panel in *Bond* was confronted with this identical quandary. Because the Pennsylvania Supreme Court in that case also had denied the habeas petitioner's untimely petition for allocatur without comment, the panel was unsure whether that denial reflected "a consideration and dismissal of the merits or constitute[d] a dismissal on procedural grounds caused by untimeliness." 864 F.2d at 310. Applying what it perceived as "the partiality for a finding of

---

**6.** This holding does not contravene the Supreme Court's decision in *Castille v. Peoples*, 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). There, the Supreme Court held that a claim has not been exhausted if it is raised for the *first* and *only* time in a petition to the state's highest court for discretionary review. Because Hull's competency claim was presented to both the Court of Common Pleas and the Superior Court prior to his untimely petition to the Pennsylvania Supreme Court, *Bond*, not *Peoples*, is controlling.

**7.** This rule stems from the well-established principle of federalism that a state conviction resting on an "adequate and independent" state ground is immune from direct review in federal courts. *Id.* at 81, 97 S.Ct. at 2503. Applying the

procedural default rule to the case before it, the Supreme Court in *Sykes* noted that the habeas petitioner's failure to object at trial to the admission of his confession prevented him from subsequently raising that issue in state court. Having found an adequate and independent state ground (i.e., a procedural default), the Court then applied its "cause" and "prejudice" exception to ascertain whether petitioner's claim was waived for purposes of federal habeas review. The Court concluded that, because the petitioner had failed to advance an explanation for his procedural default, and because the other evidence of guilt negated any possibility of prejudice, petitioner had waived his challenge to the admission of his confession.

procedural default," the panel ultimately concluded that the Pennsylvania Supreme Court had denied the petition for allocatur because it was untimely filed. *Id.* at 311. To alleviate future confusion, the panel announced a rule to be applied prospectively:

> To facilitate resolution of future claims presented in this procedural posture, we announce today a rule that when a nunc pro tunc allocatur petition is perfunctorily denied without discussion, when its untimeliness is apparent, and when sufficient facts to override the general disallowance of extended times for appeal are absent in the petition, the denial of allocatur can be presumed to be based on a procedural default caused by its untimeliness.

*Id.*

After concluding that the Pennsylvania Supreme Court's denial was premised on a state-law procedural default, the *Bond* panel declined to decide whether the "cause" and "prejudice" exception applied. *Id.* at 312. Because the petitioner contended that the "cause" for the procedural default was ineffective assistance of counsel, the panel opted to dismiss the habeas petition without prejudice so that the petitioner could file a state Post Conviction Relief Act ("PCRA") petition asserting ineffective assistance of counsel for failure to file a timely petition for allocatur. *Id.* If this PCRA petition proved successful, the panel observed, then state precedent, *see Commonwealth v. West,* 334 Pa.Super. 287, 295, 482 A.2d 1339, 1343 (1984), would require the Pennsylvania Supreme Court to grant petitioner permission to appeal *nunc pro tunc.* 864 F.2d at 312. The panel further noted that, if the Pennsylvania Supreme Court were then to deny petitioner's appeal on the merits, petitioner could return to district court for federal habeas review. *Id.*

Because *Bond* and the case at bar are factually indistinguishable, at first blush it would appear that we are bound to follow the path of our predecessor and dismiss Hull's petition without prejudice. *See* 3d Cir. IOP Chapter 9.1. However, a month after *Bond* was decided, the Supreme Court decided *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), which undermines the *Bond* panel's treatment of the procedural default issue. We therefore think that *Bond* has ceased to be the law in this circuit.

The Supreme Court in *Harris,* like the panel in *Bond,* was confronted with a state court order that was ambiguous insofar as it was unclear whether the court had dismissed a habeas petitioner's appeal on procedural grounds or on the merits. The state court in *Harris* initially had noted that the issues on appeal were considered waived under state law. *Id.* at 258, 109 S.Ct. at 1040. Despite these protestations, the state court proceeded to examine the merits of the appeal. *Id.*

In deciding whether this ambiguous invocation of a procedural default barred federal habeas review, the Supreme Court in *Harris* relied on the "plain statement rule" of *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), expressly rejecting a putative presumption in favor of procedural bar that the *Bond* panel had applied. Under the "plain statement rule," which previously had been applied in the context of direct review of state court decisions, a federal court may review a state court's resolution of a federal question unless the state court's opinion contains a "'plain statement' that [its] decision rests upon adequate and independent state grounds." *Long,* 463 U.S. at 1042, 103 S.Ct. at 3477. Extending application of the "plain statement rule" to federal habeas cases, the *Harris* Court held that a petitioner's state-law, procedural default precludes federal habeas review only if the last state court rendering a judgment in the case "clearly and expressly" states that its decision rests on a state procedural bar. 489 U.S. at 263, 109 S.Ct. at 1043. The *Harris* Court thus concluded that, because the state court had not explicitly relied on procedural waiver as a ground for denying petitioner's appeal, federal habeas review was not precluded by procedural default. *Id.* at 266, 109 S.Ct. at 1045.

The "plain statement" rule, according to *Harris,* applies regardless of whether the

state court's order is accompanied by an opinion or simply resolves the appeal without comment. Although the state court judgment at issue in *Harris* provided an explanation for the court's decision (which ultimately was found to be ambiguous), that factor had no bearing on the Supreme Court's application of the "plain statement" rule. Indeed, the *Harris* Court, in a footnote, expressly stated that its holding also applies to state court affirmances that offer no explanation: ·

> a state court that wishes to rely on a procedural bar rule in a one-line *pro forma* order easily can write that "relief is denied for reasons of procedural default." Of course, if the state court under state law chooses not to rely on procedural bar in such circumstances, then there is no basis for a federal habeas court's refusing to consider the merits of the federal claim.

*Id.* at 265 n. 12, 109 S.Ct. at 1044–45 n. 12.

Applying *Harris* to the instant appeal, it is irrelevant that the Pennsylvania Supreme Court denied Hull's petition for allowance of appeal without comment. What is critical is that the Pennsylvania Supreme Court's denial is susceptible of two interpretations: it could rest either on a state procedural bar or on the Court's resolution of the merits of Hull's appeal. Absent a clear and express statement that the Pennsylvania Supreme Court based its denial on a procedural default (to wit, untimeliness), we must assume that the Court denied Hull's appeal on the *merits*. Accordingly, the district court was not precluded by the procedural default rule from reviewing Hull's habeas claim that he received ineffective assistance of counsel at the July, 1979 competency hearing.

### C. Did Hull Receive Ineffective Assistance of Counsel at the July, 1979 Competency Hearing?

■ We turn now to the merits. The Commonwealth in essence contends that the district court erred in determining that Hull received ineffective assistance of counsel at the July, 1979 competency hearing. Resolution of this appeal thus re-quires us to apply the two-part standard for ineffective assistance of counsel defined by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because the question whether the representation a defendant received was constitutionally ineffective is a mixed question of law and fact, we are "not bound by the clearly erroneous rule." *Morrison v. Kimmelman,* 752 F.2d 918, 923 (3d Cir.1985), *aff'd,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Instead, "we may freely review the district court's conclusions." *Lewis v. Mazurkiewicz,* 915 F.2d 106, 110 (3d Cir.1990).

The first prong of the *Strickland* test, the performance inquiry, instructs this court to determine whether "counsel's representation fell below an objective standard of reasonableness." *Id.* 466 U.S. at 688, 104 S.Ct. at 2064. "In assessing an attorney's performance, courts must be 'highly deferential,' and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....'" *United States v. Gray,* 878 F.2d 702, 710 (3d Cir.1989) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065). However, "[w]here the deficiencies in counsel's performance are severe and cannot be characterized as the product of strategic judgment," the first prong of *Strickland* is clearly met. *Gray,* 878 F.2d at 711.

If we determine that counsel's performance was constitutionally deficient, then we must proceed to the second prong of *Strickland,* the prejudice inquiry. In measuring prejudice, the relevant question is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. A "reasonable probability" is defined in this context as "a probability sufficient to undermine confidence in the outcome." *Id.* In making this determination, a court must consider the "totality of the evidence" before the factfinder, for "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than

one with overwhelming record support." *Id.* at 695–96, 104 S.Ct. at 2069.

Although the district court in this case acknowledged that the two-part *Strickland* test applied, it failed to bifurcate its subsequent analysis. Rather, the court simply recounted the factors that it considered relevant to Hull's claim of ineffective assistance and concluded that counsel's errors had denied Hull a "full and fair competency hearing." In reviewing the district court's decision, we therefore are unable to ascertain whether the court held that Hull has satisfied both prongs of *Strickland* or just the first one.

Before proceeding to the presently problematic second prong of *Strickland*, we note that there is no doubt that the district court actually determined that the performance prong of *Strickland* was met in this case. This determination, we think, is unassailable. The transcript of the July, 1979 competency hearing consists of a scant four pages. The Commonwealth presented only one witness with respect to Hull's alleged competency, Dr. Harry Stamey. Dr. Stamey tesified that based on his April 20, 1979, examination of Hull, he believed Hull to be competent to stand trial. Hull's counsel chose to leave this testimony unrebutted; he neither cross-examined Dr. Stamey nor called witnesses to testify on Hull's behalf. Yet, at the time of the competency hearing, Hull's counsel was well aware that two other attending psychiatrists at Farview, Dr. Lawrence Chang and Dr. Kenneth Detrick, recently had diagnosed Hull to be incompetent. Dr. Chang, based on a January 19, 1979, examination, opined that Hull's "reasoning and judgment remain defective" and that he "remains ... incompetent to stand trial." Dr. Detrick, who had examined Hull on April 9, 1979, just eleven days before Dr. Stamey's examination, reported that Hull was not "appreciably different from any other examinations." Regardless of the degree of deference accorded counsel's performance, we cannot condone the failure of Hull's lawyer to bring these competing diagnoses to the attention of the factfinder at the competency hearing.

At the PCHA hearing before the Court of Common Pleas, Hull's trial counsel advanced two explanations for his failure to present evidence of Hull's incompetence. He stated that he had neither cross-examined Dr. Stamey nor presented any witnesses because: (1) he believed Hull to be competent to stand trial based on his own observations; and (2) Hull himself had expressed a desire to be found competent. Neither of these proffered explanations are legitimate strategic justifications.

First of all, few lawyers possess even a rudimentary understanding of psychiatry. They therefore are wholly unqualified to judge the competency of their clients. Hull's trial counsel had full knowledge that Drs. Chang and Detrick recently had found Hull to be incompetent to stand trial. He far exceeded the bounds of reasonable professional judgment by rejecting those psychiatric diagnoses in favor of his own untrained observations.

Trial counsel's second explanation, Hull's professed desire to be declared competent, also can be dismissed as illegitimate. Prior to the July, 1979 competency hearing, Hull had spent the last four years at a state mental hospital after having been declared incompetent to stand trial. Hull thus remained presumptively incompetent until the Commonwealth proved otherwise. Before he could be tried for the pending murder charge, the Commonwealth bore the burden of proving by a preponderance of the evidence that he was competent to stand trial. *See United States v. Digilio*, 538 F.2d 972, 988 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); *United States v. Hollis*, 569 F.2d 199, 204 (3d Cir.1977).

■ That trial counsel refrained from contesting the competence of Hull, a presumptively incompetent defendant, based on Hull's purported wish to be declared incompetent constitutes an abdication of counsel's professional obligations. "Fundamental to our adversary system of justice, and perhaps especially of criminal justice, is the prohibition against subjecting to trial a person whose mental condition is such that he lacks the capacity to under-

stand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *United States v. Renfroe*, 825 F.2d 763, 765 (3d Cir.1987). A presumptively incompetent defendant thus cannot be entrusted with the responsibility of dictating counsel's tactics at a competency hearing. *Cf. Commonwealth v. Higgins*, 492 Pa. 343, 349, 424 A.2d 1222, 1225 (1980) (noting that "mental competency to participate in a proceeding is not waivable and can be considered whenever raised"), *cert. denied*, 452 U.S. 919, 101 S.Ct. 3057, 69 L.Ed.2d 424 (1981).

In short, we think it axiomatic that the desire of a defendant whose mental faculties are in doubt to be found competent does not absolve counsel of his or her independent professional responsibility to put the government to its proof at a competency hearing when the case for competency is in serious question. Hence, we believe that the district court correctly determined that "counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064.

In contrast, we are unable to affirm the district court's resolution of the second prong of *Strickland*, primarily because we are unable to discern whether the district court in fact resolved this prong of the test. To demonstrate prejudice, Hull had to establish a reasonable probability that the result of the July, 1979 competency hearing would have been different but for his counsel's errors. Much in the district court's opinion can be construed as addressing this issue. The court, at several places in its opinion, appears impliedly to question the correctness of the 1979 competency deter-

mination. Indeed, the district court identifies several factors that are highly probative of Hull's incompetency to stand trial in 1979—most notably, that (1) Hull was heavily medicated throughout the relevant time period, (2) his responses to questions from the bench at the August, 1979 arraignment evinced a profound confusion, and (3) two attending psychiatrists recently had diagnosed him as incompetent to stand trial.

However, nowhere does the district court state, *in terms*, that counsel's deficient performance prejudiced the outcome of the July, 1979 competency hearing. This omission results largely from the district court's failure to bifurcate its analysis in accordance with the two-part *Strickland* test, a practice which we strongly discourage. Moreover, the ensuing confusion is exacerbated by the district court's September 11th Order, which remands the matter to the Court of Common Pleas to conduct a hearing to determine Hull's competency in July of 1979. As we have intimated above, this order can be viewed two ways, neither of which eliminates our confusion.

■ On the one hand, the district court might have found that *both* prongs of *Strickland* have been met and then concluded that the appropriate remedy was to vacate the 1979 competency determination and to order a new hearing on Hull's competency as of that date. This construction of the district court's order, however, does not pass muster; for if the district court had determined that both prongs of *Strickland* have been satisfied, then the appropriate remedy would have been to vacate Hull's guilty plea, not order a new competency hearing.[8]

---

8. As we explained *supra* at 168, because Hull had been found incompetent to stand trial in 1975, he remained presumptively incompetent until the Commonwealth proved otherwise. The Commonwealth therefore was precluded by due process from trying Hull on the pending murder charge until it obtained a judicial determination that Hull was competent to stand trial. *See Drope v. Missouri*, 420 U.S. 162, 171–72, 95 S.Ct. 896, 903–04, 43 L.Ed.2d 103 (1975) (the prohibition against subjecting to trial an incompetent defendant is "fundamental to an adversary system of justice"). If the district court in

fact has concluded that Hull received constitutionally ineffective assistance of counsel at the 1979 competency hearing, then the determination that Hull was competent to stand trial in 1979 retroactively becomes null and void. Once that determination is stricken, Hull retroactively reverts to his presumptively incompetent state, and his 1979 guilty plea thus becomes retroactively invalid as well. Simply stated, the 1979 competency determination was an essential precondition to the guilty plea; hence, if the former has been declared constitutionally in-

On the other hand, the district court might have found that only the first prong of the *Strickland* test has been met and then concluded that an evidentiary hearing was needed to decide whether counsel's deficient performance prejudiced the outcome of the competency hearing. Accordingly, the remand could be perceived as an order instructing the state court to revisit the issue of Hull's competency in July, 1979 and to determine whether the result of the 1979 competency hearing probably would have been different but for counsel's errors. However, this construction does not pass muster either, for if the district court had determined that only the first prong of *Strickland* has been met, and that an evidentiary hearing is necessary on the question of prejudice, then the appropriate forum for that hearing would have been federal, not state, court. *See Keller v. Petsock*, 853 F.2d 1122, 1129–30 (3d Cir. 1988).[9]

In sum, the district court's failure to bifurcate its *Strickland* analysis and its remand to state court to conduct a hearing on Hull's competency as of July, 1979 leave us perplexed regarding the legal significance of the court's September 11th Order. We therefore will vacate the district court's order and remand the case to the district court with instructions to clarify its order in accordance with this opinion. If the district court believes that both prongs of *Strickland* have been satisfied, it presumably will vacate Hull's 1979 guilty plea and permit the Commonwealth the opportunity to retry Hull within a specified period of time. If, however, the district court believes that only one prong of *Strickland* has been satisfied, it presumably will modify its previous order and conduct the evidentiary hearing on the prejudice component itself.

### III. CONCLUSION

For the reasons set forth above, the order of the district court will be vacated, and the matter remanded to the district court for further proceedings in accordance with this opinion.

---

firm, then the latter also must fall as the next domino in line.

**9.** In *Keller*, we held that, if an evidentiary hearing is necessary in a federal habeas case to resolve a disputed factual question, it should be held in federal district court, rather than state court. *See also Smith v. Freeman*, 892 F.2d 331, 341 n. 16 (3d Cir.1989). Our holding in *Keller* is equally apt here. The Pennsylvania courts already have had ample opportunity to examine whether Hull received ineffective assistance of counsel at the July, 1979 competency hearing. Prior to entering the doorway to federal relief, Hull presented this issue (via his PCHA petition) to each tier of the Pennsylvania court system. In the habeas context, comity requires only that the state courts be given the first chance to review federal claims. "There is no requirement, however, that they be given more than one opportunity to adjudicate these claims." *Keller*, 853 F.2d at 1130.