**Larry Gene HULL, Appellant,**

v.

**Robert M. FREEMAN, Ernest D. Preate, Jr., Attorney General.**

**No. 91–6010.**

United States Court of Appeals, Third Circuit.

Argued July 16, 1992.

Decided April 19, 1993.

87

James V. Wade (argued), Office of Federal Public Defender, Harrisburg, PA, for appellant.

John F. Nelson (argued), Office of Dist. Atty., Chambersburg, PA, for appellees.

Before: MANSMANN, SCIRICA and ROTH, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

This case illustrates the complexity engendered by the current federal habeas

corpus doctrine of procedural default. In his petition for writ of habeas corpus, Larry Gene Hull contends he received ineffective assistance of counsel in a state court competency hearing before he pled guilty to murder. In an earlier opinion, we held the performance of Hull's counsel at that hearing fell below an objective standard of reasonableness, fulfilling the first of two elements of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Hull v. Freeman*, 932 F.2d 159, 168 (3d Cir.1991) ("*Hull I*"). Because we were unable to ascertain if the district court decided whether counsel's defective performance prejudiced Hull—the second element of an ineffective assistance claim—we vacated the district court's order and remanded for further proceedings. On remand, the district court held Hull was not prejudiced by his attorney's failure to cross-examine the sole witness who testified at the competency hearing or to present evidence on Hull's behalf, and denied the petition.

In reaching the merits of Hull's petition in *Hull* I, we first considered whether Hull had procedurally defaulted his state post-conviction claim by his untimely appeal to the Pennsylvania Supreme Court. After the Pennsylvania Superior Court denied Hull's state post-conviction claim on the merits, Hull's post-conviction counsel did not file a petition for permission to appeal to the Pennsylvania Supreme Court because he thought an appeal lacked merit. Because counsel did not notify Hull in time for Hull to comply with the filing deadline, Hull filed a *pro se* petition three months out of time. The Pennsylvania Supreme Court denied the petition without comment.

In *Hull* I, we held this denial did not constitute a ruling based on procedural default barring federal habeas review. 932 F.2d at 167. Two Supreme Court cases decided after *Hull* I dictate the opposite conclusion—that the Pennsylvania Supreme Court's denial of Hull's petition did constitute a ruling based on procedural de-

fault. This ruling bars federal review of Hull's claim unless he can show "cause" for his procedural default and "prejudice" resulting therefrom. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Hull asserts the "cause" for his untimely post-conviction appeal to the Pennsylvania Supreme Court was his counsel's failure to file the appeal, and his failure to notify Hull of this until after the deadline had passed. As we explain, Hull's post-conviction counsel's failure to file the appeal cannot constitute "cause" as a matter of federal law. Therefore, Hull can only obtain federal habeas review if the Pennsylvania Supreme Court decides to waive his procedural default and hear the merits of his claim.

If post-conviction counsel's conduct amounts to ineffective assistance of counsel under Pennsylvania law, it would constitute a basis for such a waiver, which would entitle Hull to a determination on the merits of his state post-conviction claim by the Pennsylvania Supreme Court. *Commonwealth v. West*, 334 Pa.Super. 287, 295, 482 A.2d 1339, 1343 (1984). If the Pennsylvania Supreme Court denies Hull's claim on the merits, we will then be free to review Hull's federal habeas claim without considering whether he established cause and prejudice for his state court default.

Hull has never presented to state court his claim that post-conviction counsel provided ineffective assistance in failing to file a petition for allowance to appeal to the Pennsylvania Supreme Court. Because we believe this is a colorable claim, we will vacate the district court's order denying Hull's petition and direct that court to enter an order dismissing Hull's petition without prejudice to enable him to file a state post-conviction petition asserting this claim.

I.

■ In *Hull* I, we determined that Hull's failure to file a timely petition for allocatur[1] and subsequent petition for allocatur

---

1. "Allocatur" is synonymous with "allowance of appeal," which is the official term used for

petitions to the Pennsylvania Supreme Court. 42 Pa.Cons.Stat.Ann. § 724 (1992).

*nunc pro tunc* with the Pennsylvania Supreme Court following the Pennsylvania Superior Court's affirmance of denial of his state post-conviction claim constituted a state procedural default. 932 F.2d at 165. Although this procedural default could have constituted a bar to Hull's habeas claims, we held that under *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), it did not. 932 F.2d at 167. *Harris,* we said, "held that a petitioner's state-law, procedural default precludes federal habeas review only if the last state court rendering a judgment in the case 'clearly and expressly' states that its decision rests on a state procedural bar." *Id.* 932 F.2d at 166 (quoting *Harris,* 489 U.S. at 263, 109 S.Ct. at 1043. We also observed that "the *Harris* court, in a footnote, expressly stated that its holding also applies to state court affirmances that offer no explanation." *Id.* 932 F.2d at 167 (citing *Harris,* 489 U.S. at 265 n. 12, 109 S.Ct. at 1044 n. 12). Applying *Harris,* we held that we must assume the Pennsylvania Supreme Court's denial of Hull's petition for allowance of appeal without comment constituted a denial on the merits. Accordingly, we found Hull's habeas claim was not precluded by procedural default and we considered it on the merits.

■ In two 1991 decisions, the Supreme Court limited the *Harris* presumption we applied in *Hull* I—that a state court's denial of a habeas petition rests on a procedural default only where it "clearly and expressly" so states. In *Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991), the Court held that "[a] predicate to the application of the *Harris* presumption is that the decision to which the petitioner presented his federal claims must fairly appear to rest primarily on federal law or to be interwoven with federal law." In *Ylst v. Nunnemaker,* —— U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), decided the same day as *Coleman,* the Court addressed the precise question presented by Hull's case: "how federal courts in habeas proceedings are to determine whether an unexplained [state court] order ... rests primarily on federal law" within the meaning of *Coleman. Id.*

at ——, 111 S.Ct. at 2594. *Ylst* resolved this question by establishing a presumption to determine whether such unexplained orders "rest primarily on federal law" so as to trigger the *Harris* presumption we applied in *Hull* I. Under *Ylst,* a federal court faced with an unexplained state court order should "look through" to the previous state court judgment on the same claim and presume that the unexplained order rests on the same ground as that judgment. Thus, "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Id.* This presumption can be rebutted by strong evidence, such as where "the later appeal to the court that issued the unexplained order was plainly out of time, and ... the latter court did not ordinarily waive such a procedural default without saying so." *Id.* at ——, 111 S.Ct. at 2595.

We applied *Coleman* and *Ylst* to affirm the dismissal of a habeas corpus petition for state procedural default in *Caswell v. Ryan,* 953 F.2d 853 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2283, 119 L.Ed.2d 208 (1992). In *Caswell,* the prisoner filed a petition for allocatur *nunc pro tunc* on his state post-conviction claim after missing the deadline to file a petition for allocatur, and the Pennsylvania Supreme Court denied the petition without comment. We determined that "the Supreme Court's decision in *Coleman,* reinterpreting its ruling in *Harris,* in effect overrules our decision in *Hull* [I], and that we can no longer conclude that there has not been a procedural default merely because the state Supreme Court fails to clearly and expressly base its ruling on a state procedural ground." *Id.* 953 F.2d at 859.

Applying *Coleman* and *Ylst,* we found the Pennsylvania Supreme Court's unexplained denial of Caswell's claim was based on his procedural default, not on the merits. *Caswell,* 953 F.2d at 860. We noted *Ylst* indicated its presumption that an unexplained state court order rested on the same ground as the last reasoned state

court judgment could be rebutted where "the later appeal was plainly out of time, and [where] the latter court did not ordinarily waive such a procedural default without saying so." 953 F.2d at 860 (quoting Ylst, —— U.S. at ——, 111 S.Ct. at 2595). We found that test satisfied, reasoning that Caswell's appeal, filed fifteen months late, was "plainly out of time, and that the Pennsylvania Supreme Court "did not ordinarily waive" the timeliness requirement without saying so. Id.

We then considered whether Caswell had established the requisite cause and prejudice to excuse his procedural default and obtain federal habeas review. To establish cause, Caswell contended only that the Pennsylvania Supreme Court should not have held him to "strict compliance" with its procedural rules and should have "liberally constru[ed] his petition for appointment of counsel to file a petition for allocatur." 953 F.2d at 862. Rejecting this claim, we concluded the Pennsylvania Supreme Court's "failure to 'bend the rules'" did not constitute cause. Id. We noted that Caswell offered no justification for delaying fifteen months to file his nunc pro tunc petition, even though he had written to the Prothonotary shortly before the 30–day time limit to appeal expired and had received a response shortly thereafter. Id. That Caswell did not have counsel in filing his nunc pro tunc petition, we concluded, also did not establish cause in light of Caswell's "ample legal sophistication," demonstrated by his actions to move pro se in the trial court for a new attorney, to file a post-conviction act petition, and to prepare "a lengthy nunc pro tunc petition, federal habeas petition, and supporting briefs—all without the aid of counsel." Id. "Finally," we observed, "even the untimely withdrawal of Caswell's counsel following the decision of the [Pennsylvania] Superior Court did not constitute cause," because ineffectiveness of counsel is not cause

where, as in post-conviction proceedings, a petitioner has "no constitutional right to an attorney." Id. (quoting Coleman, —— U.S. at ——, 111 S.Ct. at 2566).

## II.

■ As a threshold matter, we believe we must apply Coleman and Ylst to Hull's petition, although these decisions were handed down after our decision in Hull I. Judicial decisions normally are retroactively applied. Goodman v. Lukens Steel, 482 U.S. 656, 662, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987). In Caswell, a habeas case filed in December 1989, we applied retroactively the 1991 decisions of Coleman and Ylst.[2]

■ The result is not different where, as here, Hull I previously decided the issue of procedural default in Hull's favor. Relitigation of issues previously determined in the same litigation is controlled by principles of the law of the case doctrine rather than collateral estoppel. 18 Charles A. Wright, Arthur R. Miller, and Edward R. Cooper, Federal Practice and Procedure: Jurisdiction § 4478, at 788 (1981). An intervening change in controlling law is an exception to the law of the case doctrine. Zichy v. City of Philadelphia, 590 F.2d 503, 508 (3d Cir.1979) (applying Supreme Court case decided after earlier panel's decision in the same case in order to reverse earlier panel's decision).

## III.

### A.

■ We now consider whether Coleman, Ylst, and Caswell permit us to reach the merits of Hull's claim. We read these decisions to compel the conclusion that the Pennsylvania Supreme Court's denial without comment of Hull's untimely appeal of his state petition was based on procedural default. As in Caswell, application of the

---

**2.** We note that Harris v. Reed, the case upon which we relied in deciding Hull I, has been held to apply retroactively in a habeas case, on the ground that it is not a constitutional rule and thus falls outside the rule that new constitutional rules do not apply in habeas cases. Peter-son v. Scully, 896 F.2d 661, 664 (2d Cir.), cert. denied, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990). This rationale applies equally to retroactive application of Coleman and Ylst here.

*Ylst* "look through" approach reveals that the Pennsylvania Superior Court's denial of Hull's petition was on the merits, creating the presumption that the Pennsylvania Supreme Court's unexplained denial of his petition was also on the merits. But the reasoning employed in *Caswell* to find the *Ylst* presumption rebutted also applies here. Hull's appeal, filed three months after the 30–day time limit expired, was less untimely than Caswell's fifteen-month-late appeal. But we believe three months is also "plainly out of time" within the meaning of *Ylst.* We see no principled way to distinguish between a three- and a fifteen-month delay. The second aspect of *Caswell*'s analysis—that the Pennsylvania Supreme Court ordinarily does not waive the timeliness requirement without saying so—also applies to Hull's appeal, which, like Caswell's, was filed with that court. Therefore, we find the *Ylst* presumption rebutted here, and now turn to the question whether Hull has established cause and prejudice for his procedural default.[3]

### B.

The Supreme Court has defined "cause" as "some objective factor external to the defense." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). "A showing that the factual or legal basis for a claim was not reasonably available to counsel, or some interference by officials" are two illustrations of such a factor, but not an "exhaustive list." *Id.*

■ Hull asserts that several facts establish "cause" for his default. Hull notes post-conviction counsel never notified him counsel would not file a petition for allocatur until after the 30–day appeal period elapsed. Hull was particularly reliant upon counsel to file his appeal, and to advise him of the deadline, because he is illiterate and had been diagnosed as borderline mentally retarded. However, we do not believe these circumstances can establish "cause."

Under *Coleman,* ineffective assistance of post-conviction counsel cannot constitute "cause" because the Sixth Amendment does not entitle a defendant to post-conviction counsel. — U.S. at —, 111 S.Ct. at 2566. And Hull's illiteracy and mental retardation are not "external" to his defense within the meaning of *Carrier.* *See United States v. Flores,* 981 F.2d 231, 236 (5th Cir.1993) (defendant's illiteracy, deafness, and lack of legal training not "external" to defense); *Cornman v. Armontrout,* 959 F.2d 727, 729 (8th Cir.1992) ("below-average intelligence" not "external" to defense).

■ Nonetheless, we believe Hull's mental deficiencies, combined with post-conviction counsel's failure to file the appeal and failure to notify Hull until after the deadline passed, create a colorable claim for waiver under Pennsylvania law. *Commonwealth v. West,* 334 Pa.Super. at 295, 482 A.2d at 1343. Defendants like Hull are entitled to post-conviction counsel on their first petition. Pa.R.Crim.P. 1504(a). Furthermore, we believe the concept of federal-state comity underlying federal habeas review entitles Hull to a state court adjudication of his claim for waiver. *Cf. Murray v. Carrier,* 477 U.S. at 488–89, 106 S.Ct. at 2645–46 ("the exhaustion doctrine ... generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default").

Hull's mental deficiencies, and lack of notice from counsel on the appeal deadline, distinguish this case from *Caswell.* Unlike Hull, Caswell not only had notice of the thirty-day deadline, he took several affirmative steps to comply with it. He wrote to appellate counsel asking him to petition for allocatur six days after the Pennsylvania Superior Court denied his claim. 953 F.2d at 856 n. 5. Caswell's counsel wrote back less than two weeks later, "advising him an appeal would be frivolous," where-

---

**3.** Failure to hear Hull's claims would not fall within the "fundamental miscarriage of justice" exception to the procedural default rule. That exception "is concerned with actual as compared to legal innocence," *Sawyer v. Whitley,*

— U.S. —, —, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992). Where, as here, Hull has no colorable claim that he did not commit the murder for which he was convicted, he cannot satisfy this exception.

upon Caswell wrote the Prothonotary, still within the thirty-day deadline, notifying her of his desire to petition for allocatur and requested counsel be appointed to represent him on this appeal. *Id.* The Prothonotary promptly responded, advising Caswell to file a petition making any requests he had. Caswell then inexplicably waited over a year to file his petition for allocatur *nunc pro tunc. Id.*

Caswell's correspondence reveals another significant difference, his "ample legal sophistication." 953 F.2d at 862. In finding Caswell had not shown cause, we noted he had filed several briefs and petitions without aid of counsel. Hull clearly could not have represented himself in this manner. He attributes his delay in part to the time it took to find somebody to read to him counsel's letter advising him counsel would not file a petition for allocatur.

The distinctions between *Caswell* and this case are borne out in the Pennsylvania decisions. In upholding an ineffective assistance of counsel claim based on counsel's failure to file an appeal and to notify defendant of this failure in *Commonwealth v. West,* the court distinguished its earlier decision in *Commonwealth v. Morrow,* 326 Pa.Super. 443, 474 A.2d 322 (1984), on the same bases upon which we distinguish *Caswell.* In *Morrow,* petitioner brought a second state post-conviction petition alleging counsel on his first post-conviction petition failed to notify him of his right to petition for allocatur, and alleging this failure constituted ineffective assistance. Rejecting this claim, the court emphasized Morrow's failure to allege that "he was unaware" he had the right to petition for allocatur, that he wanted counsel to petition .for allocatur, or that he asked counsel to do so. 326 Pa.Super. at 446, 474 A.2d at 324. In upholding petitioner's claim in *West,* the court carefully distinguished *Morrow* on these facts, stating that "appellant clearly desired to petition for allocatur, as can be seen by his subsequent *pro se* attempt to do so, [and] counsel advanced no explanation as to the delay between his receipt of [the court's] decision and notification of appellant." 334 Pa.Super. at 295, 482 A.2d at 1343. *See*

*Commonwealth v. Gilbert,* 407 Pa.Super. 491, 496 & n. 1, 595 A.2d 1254, 1256 & n. 1 (1991) (*Morrow,* not *West,* applies where appellant knows of his right to petition for allocatur before deadline passes).

These Pennsylvania decisions not only support the distinction between this case and *Caswell,* they also suggest Hull's claim of ineffective assistance of post-conviction counsel has some merit. Like West, Hull petitioned *pro se* for allocatur, thus demonstrating his desire to appeal, and unlike Morrow, Hull alleged he was unaware of his right to petition for allocatur at the time the deadline passed.

We hold that where a petitioner has raised a colorable claim for waiver of procedural default under state law, we should dismiss his habeas petition without prejudice so he can assert this claim in state court. We note this is not a case where petitioner has abused his right to federal habeas by withholding a state law claim from an earlier petition. *Cf. McCleskey v. Zant,* —— U.S. ——, ——, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (discussing "abuse of the writ" doctrine under which petitioners must include all federal claims in first petition or show cause and prejudice for not doing so). Nor is it a case where petitioner seeks to bypass the state courts by raising for the first time on federal habeas his claim for ineffective assistance of post-conviction counsel. *E.g., Rose v. Lundy,* 455 U.S. 509, 518–20, 102 S.Ct. 1198, 1203–04, .71 L.Ed.2d 379 (1982) (discussing policies behind exhaustion doctrine). Hull does not assert ineffective assistance of post-conviction counsel as a separate substantive claim entitling him to relief; he makes this contention only in an attempt to address the "cause and prejudice" requirement of federal habeas jurisprudence. For these reasons, we believe we should refrain from deciding "cause and prejudice" and should allow Hull to attempt to establish a basis for waiver in state court, after which he may obtain federal habeas review if the Pennsylvania Supreme Court rejects his claim on the merits.

We took this approach in *Bond v. Fulcomer*, 864 F.2d 306 (3d Cir.1989). In *Bond*, as here, petitioner procedurally defaulted by untimely filing a petition for allocatur to the Pennsylvania Supreme Court. On federal habeas review, Bond claimed his untimely filing resulted from counsel's abandonment of his claim on the ground a petition for allocatur would not be worthwhile. 864 F.2d at 311. We noted that under prior Pennsylvania precedent, "[w]hen counsel has been found ineffective for failure to file an appeal, permission for *nunc pro tunc* appeals has been allowed." *Id.* at 312 (citing *Commonwealth v. West*, 334 Pa.Super. at 295, 482 A.2d at 1343). We then cited *Carrier* for the proposition that Bond's ineffective assistance of counsel claim should first be presented to the state courts "in the interest of comity." *Id.* Accordingly, we dismissed Bond's habeas petition without prejudice so he could file a state post-conviction petition raising his ineffective assistance of counsel claim.

Both Hull and the District Attorney contend we should follow *Bond* here. We agree. As in *Bond*, Hull asserts his failure to file a timely petition for allocatur resulted from counsel's decision that a petition would not be worthwhile, coupled with counsel's failure to notify Hull of this refusal until after the 30–day appeal period had elapsed. Because under *Coleman* ineffective assistance of post-conviction counsel does not constitute "cause" for Hull's procedural default as a matter of federal law, —— U.S. at ——, 111 S.Ct. at 2566, Hull can only obtain federal habeas review if the Pennsylvania courts waive his procedural default. As in *Bond*, Hull must establish ineffective assistance of post-conviction counsel as a matter of Pennsylvania law in order to obtain a ruling waiving his procedural default and thereby obtain a determination on the merits of his claim of ineffective assistance of trial counsel by the Pennsylvania Supreme Court. By en-

abling the Pennsylvania Supreme Court to determine whether under Pennsylvania law Hull has established ineffective assistance of post-conviction counsel, thus entitling him to a determination by that court on the merits of his ineffective assistance of trial counsel claim, this approach comports with the comity concerns identified in *Bond*.[4]

Accordingly, we will dismiss Hull's petition without prejudice so he may file a state post-conviction petition to assert his claim of ineffective assistance of post-conviction counsel as a ground for his untimely petition for allocatur on his ineffective assistance of trial counsel claim. If the Pennsylvania Supreme Court rejects Hull's ineffective assistance of post-conviction counsel claim, we presume it will deny his petition for permission to appeal *nunc pro tunc* on this basis. It will then have ruled based on procedural default and, under *Coleman*, Hull will be barred from federal habeas review because he cannot rely on his ineffective assistance of post-conviction counsel to establish "cause" as a matter of federal law for this procedural default. *Coleman*, —— U.S. at ——, 111 S.Ct. at 2566.

■ By contrast, if the Pennsylvania Supreme Court upholds Hull's ineffective assistance of post-conviction counsel claim, we presume it will grant his petition for permission to appeal *nunc pro tunc* on his ineffective assistance of trial counsel claim. The court will then either deny or grant Hull's petition for allocatur on his ineffective assistance of trial counsel claim. In either scenario, the court will be considered to have reached the merits of Hull's ineffective assistance of trial counsel claim, and thus to have waived his procedural default with respect to this claim. If the Pennsylvania Supreme Court grants Hull's petition for allocatur, it will in fact reach the merits of the ineffective assistance of

---

**4.** In requiring Hull to present his claim of ineffective assistance of post-conviction counsel first to state court, we hold only that this claim is unexhausted because it has never been presented to state court. This does not affect our earlier holding that, by filing a *nunc pro tunc* petition in pursuit of his underlying claim that he received ineffective assistance from his trial counsel, Hull exhausted his state remedies as to this claim. *Hull* I, 932 F.2d at 164 (citing *Bond*, 864 F.2d at 309).

trial counsel claim. If the court denies Hull's petition for allocatur, it will be deemed, under the *Ylst* "look-through" rule, to have decided the ineffective assistance of trial counsel claim on the same ground as the Pennsylvania Superior Court, which rejected it on the merits.[5] Thus, in either event, Hull will have obtained a determination on the merits of his ineffective assistance of trial counsel claim by the Pennsylvania Supreme Court, and, necessarily, a ruling by that court that it waived Hull's procedural default of this claim on the ground he received ineffective assistance of post-conviction counsel.

If the Pennsylvania Supreme Court denies Hull's ineffective assistance of trial counsel claim either by denying allocatur or by granting allocatur and rejecting it on the merits, he may re-file his federal habeas petition. *Bond,* 864 F.2d at 312.[6]

### IV.

For the foregoing reasons, we will vacate the district court's order and direct that court to enter an order dismissing the petition without prejudice.

---

**5.** Although we recognize the denial of allocatur has no precedential value under Pennsylvania law, *Bond v. Gallen,* 292 Pa.Super. 207, 214 n. 4, 437 A.2d 7, 11 n. 4 (1981), *aff'd,* 503 Pa. 286, 469 A.2d 556 (1983), we hold here that as a matter of federal law, application of the *Ylst* presumption in these circumstances deems the denial a decision on the merits.

**6.** The only risk presented by this procedure is that the Pennsylvania Supreme Court will deny Hull's *nunc pro tunc* petition without comment, in which case our decision will have placed Hull

into an enclosed loop from which he cannot escape. This outcome is, of course, in the hands of the Pennsylvania Supreme Court, but just as we have looked to principles of comity in deciding this case, we expect that court will do likewise. Our approach here should signal the problems resulting from an unexplained order and should reduce the significant drain on both the state and federal court systems presently caused by threshold questions of habeas corpus law.