

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-3-2001

# Appel v. Horn

Precedential or Non-Precedential:

Docket 99-9003

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Appel v. Horn" (2001). *2001 Decisions.* Paper 98.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/98

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 3, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-9003

MARTIN DANIEL APPEL

v.

MARTIN HORN, COMMISSIONER PENNSYLV ANIA
DEPARTMENT OF CORRECTIONS; JAMES S. PRICE,
SUPERINTENDENT OF THE STATE CORRECTIONAL
INSTITUTION AT GREENE AND JOSEPH MAZURKIEWICZ,
SUPERINTENDENT OF THE STATE CORRECTIONAL
INSTITUTION AT ROCKVIEW,
        Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 97-cv-02809)
District Judge: Hon. William H. Yohn, Jr.

Argued October 5, 2000

Before: BECKER, Chief Judge, SLOVITER and
GREENBERG, Circuit Judges

(Filed May 3, 2001)

        John M. Morganelli (Argued)
        Office of District Attorney of
         Northampton County
        Easton, PA 18042

         Attorney for Appellants

          Billy H. Nolas (Argued)
          David W. Wycoff
          Michael Wiseman
          Defender Association of Philadelphia
          Federal Capital Habeas Corpus Unit
          Philadelphia, PA 19106

           Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

The Commonwealth of Pennsylvania appeals from the order of the District Court dated May 21, 1999 granting the Petition of Martin Daniel Appel for a Writ of Habeas Corpus. The District Court granted the writ of habeas corpus after it determined that Appel had been constructively denied his Sixth Amendment right to counsel in violation of the Supreme Court's decision in United States v. Cronic, 466 U.S. 648 (1984). The District Court vacated Appel's conviction and sentence, but stayed execution of the writ for 180 days in order to permit the Commonwealth to provide Appel a new trial within that time.

I.

FACTS

The parties agree that the District Court's Memorandum and Order of May 21, 1999 accurately sets forth the factual background, and we will accordingly accept these facts as accurate and summarize them here, supplemented by other uncontested facts of record.

On June 6, 1986, Appel and Stanley Hertzog, pursuant to a prearranged plan, robbed the First National Bank of Bath in East Allen Township, Pennsylvania. Appel killed two tellers and a bank official, and both robbers shot at others, injuring two other persons. Appel and Hertzog were arrested later that day and charged with murder, robbery,

and related crimes. On June 9, 1986, while being held in prison, Appel confessed to certain law enfor cement officers.[1]

On June 10, 1986, Appel filed an application for appointment of counsel with the Public Defender . It is the period between June 10, 1986 and June 20, 1986 that is critical to the writ of habeas corpus. On June 10, 1986, the Public Defender assigned Ellen Kraft and Lor enzo Crowe to serve as Appel's attorneys and they enter ed appearances on Appel's behalf. When Kraft and Crowe visited Appel in the Northampton County Prison on June 11, 1986, however , Appel immediately told them that he did not want them to serve as his attorneys. Kraft later testified that Appel had only requested a Public Defender after being told that he would need a lawyer in order to receive visitors while he was in that prison.

Kraft and Crowe nevertheless accompanied Appel to a hearing before the trial judge on June 12, 1986. During that hearing, the trial judge referred to Kraft and Crowe as Appel's "counsel" and they did not dispute this characterization. At the hearing, Appel told the judge, "I would like to represent myself. I feel I am best able to project my own thoughts and express my desires speaking for myself in the case." App. II at 14. After being told the charges against him and the possible penalties he faced, Appel again told the judge, "My choice is to r epresent myself. I have no objection to [Kraft and Cr owe] as advisors." App. II at 32–33. He explained that having counsel would "slow down the wheels of justice, the prosecution's case against me." App. II at 33. The judge did not accept Appel's waiver of counsel at that time, stating that before he did so, he would order Appel to undergo a psychiatric examination in order to assist the judge in determining Appel's competency to waive counsel.

On June 17, 1986, Appel was examined by Dr. Janet Schwartz, a psychiatrist on the staff of Northampton County Mental Health and Mental Retardation Unit. Before that examination, Dr. Schwartz met with John Weaver, a social worker on that staff, who had interviewed Appel

---

1. The record before us shows no details of this confession, and it is not at issue.

3

following the crime and had received from him some background information. Dr. Schwartz received no information from either Kraft or Crowe and, after spending an hour with Appel, found Appel to be competent to waive his right to counsel. Dr. Schwartz's report to the court stated, "Mr. Appel appears to have made a rational and well thought out decision that he would like to receive the death penalty and would like this to occur as soon as possible. On the basis of my examination I feel that he is competent to make this decision and to refuse counsel." App. II at 154. On appeal, Appel makes the point that his competency evaluation was only Dr. Schwartz's second competency evaluation in a felony case, and her first capital one. She was, however, board certified in psychiatry and neurology.

The judge held a second hearing on June 20, 1986. The judge questioned Appel again, and Appel repeated his intention to proceed without an attorney. Kraft and Crowe were present at this hearing, but provided no information relevant to Appel's competency and specifically advised the court in response to its inquiry that they had nothing to put on the record at that time. They did not challenge the psychiatrist's conclusion. The judge then accepted Appel's waiver of counsel based on Dr. Schwartz's report and appointed Kraft and Crowe as standby counsel pursuant to Pa. R. Crim. P. 318(d) (renumbered Rule 121(D) and amended March 1, 2000, effective April 1, 2001).[2]

Appel pled guilty on July 20, 1986 to three counts of criminal homicide, two counts of attempted homicide, one count of robbery, two counts of aggravated assault and various other charges. See Commonwealth v. Appel, 517 Pa. 529, 533, 539 A.2d 780, 781 (1988) (hereafter Appel I). Under Pennsylvania law, following the defendant's plea of guilty to criminal homicide, the court fixes the degree of guilt after a hearing. In Appel's case, the hearing was held August 7 through August 9, 1986. At that hearing, Appel reiterated his waiver of counsel and stated, inter alia,

_____

2. Pa. R. Crim. P. 318(d) stated, "When the defendant's waiver of counsel is accepted, standby counsel may be appointed for the defendant. Standby counsel shall attend the proceedings and shall be available to the defendant for consultation and advice."

I would like to state for the record, that during the entire proceedings and/or hearings in this matter, I have been very much aware of what is going on. That is to say, I am rational, sane, competent and alert. I have had plenty of opportunities to discuss and consult with stand-by counsel, Mr. Crowe and Ms. Kraft. And I have consulted with them on various occasions.

I feel that by cooperating with the prosecution and by pleading guilty to all charges, that I have done the honorable thing. And, I hope that I have set a precedent here today for all future defendants in so doing.

The only mitigating factors that I wish to enter into the record, would be:

One, that I have had no prior felony convictions against me; and,

Two, that I was gainfully employed at the time of my arrest.

I would also like to say that I will not appeal your decision or any decisions that you made. Further more, I trust that the American Civil Liberties Union will not interfere with this matter and that no other outside legal aid groups will make any appeal [on] my behalf.

Commonwealth v. Appel, 547 Pa. 171, 182, 689 A.2d 891, 896 (1997) (brackets in original) (quoting Degree of Guilt Hearing Tr. 8/9/86, at 367) (hereafter Appel II).

The trial court found Appel guilty of three counts of first degree murder for the deaths of the three bank employees. See id.

On August 19, 1986, after the degree of guilt hearing, Appel was examined at the request of Kraft and Crowe by Dr. Paul Kenneth Gross, another psychiatrist. Dr. Gross found "no evidence of any psychosis, severe depression, agitation or paranoia," App. II at 71, and stated in his written report that there was "no evidence that [Appel] was suffering from any mental disease or defect at the time of the crime and that, at that time, he was fully aware of his

5

behavior, could appreciate the natur e and quality of it, and
knew the wrongfulness of his behavior." App. II at 71.

At sentencing, Appel again waived his right to counsel
and requested that he be sentenced to death. The court
imposed three sentences of death on September 3, 1986.
Appel did not file any post-verdict motions but the
Pennsylvania Supreme Court reviewed Appel's conviction
and sentence based on an automatic direct r eview, see 42
Pa. Cons. Stat. Ann. S 9711(h), and affir med, finding that
"the evidence supports beyond a reasonable doubt the trial
court's findings that defendant was guilty of thr ee counts of
first degree murder." Appel I, 517 Pa. at 536, 539 A.2d at
783.

Governor Tom Ridge signed Appel's death warrant on
February 28, 1995, which set the execution date for the
week of April 4, 1995. However, shortly after the death
warrant was signed, Appel requested counsel andfiled a
petition under Pennsylvania's Post-Conviction Relief Act
("PCRA"), 42 Pa. Cons. Stat. Ann. S 9541 et seq., in which
Appel argued, among other things, that he was mentally ill
and incompetent during the 1986 proceedings r esulting in
his guilty plea and death sentence, and that he was denied
effective assistance of counsel during the 1986 proceedings.

The PCRA trial court conducted hearings from May 6 to
19, 1995. At these hearings, Appel presented a number of
psychologists and physicians who examined Appel eight or
nine years after the murders. They testified that he had
suffered from Graves' disease, a for m of hyperthyroidism,
during the summer of 1986. This condition is characterized
by an enlarged thyroid, a rapid pulse, and increased
metabolism due to excessive thyroid secr etion. Appel's
experts testified that the Graves' disease caused him to
become paranoid and delusional. He told them that the
bank robbery had been part of a CIA mission to eliminate
CIA "moles" and that he was bound to keep his mission
secret. Appel had also repeatedly told them that he was
part of a "special operations" unit of the military. See, e.g.,
PCRA Tr. 5/6/95, at 23-37 (testimony of Dr. James
Merikangas); PCRA Tr. 5/8/95, at 355-73 (testimony of Dr.
Henry Dee); PCRA Tr. 5/12/95, at 35-42 (testimony of Dr.
Frank Dattilio); PCRA Tr. 5/16/95, at 20-55 (testimony of

Dr. Jethro Toomer). Appel's mother , girlfriend, and other acquaintances corroborated that Appel had acted strangely in 1986.

In support of Appel's ineffective assistance of counsel claim, which Appel based on the failure of Kraft and Crowe to investigate Appel's mental illness in 1986 that allegedly would have led them to discover his mental illness from his family, friends, and employment records, Appel presented Kraft and Crowe as witnesses at the PCRA hearing. They testified that they did not consider themselves to be Appel's counsel at either the June 12, 1986 or June 20, 1986 hearings, and never considered themselves to be his counsel. Kraft testified that "Mr. Appel waived counsel from day one." PCRA Tr. 5/12/95, at 162 (testimony of Ellen Kraft). She stated that they refrained fr om investigating Appel's background because "we were not his attorneys." PCRA Tr. 5/12/95, at 165. Crowe also testified that no investigation was made because "[w]e wer e, I felt that we were standby counsel. I didn't think [investigation] was necessary." PCRA Tr. 5/15/95, at 9 (testimony of Lorenzo Crowe).

The Commonwealth introduced evidence that Appel's motive for the robbery was to get money fast, and that he had rational reasons for wanting to plead guilty and be executed. Specifically, the Commonwealth intr oduced excerpts of an interview Appel gave in 1987 for a television documentary entitled "In the Mind of a Mur derer," in which he admitted that his motive for the crimes was to get money and kill potential witnesses. The Commonwealth also introduced a transcript of a taped interview with Appel in 1993 in which he explained that he robbed the bank to get money for his girlfriend, sought the death penalty so that she could get the insurance proceeds, enjoyed being in control of the court proceedings and assisting the Commonwealth, and got the idea to use Graves' disease as the basis of an appeal from a former death row inmate. See Appel II, 547 Pa. at 195, 689 A.2d at 902–03.

The trial court denied Appel's PCRA petition on June 14, 1995. The Pennsylvania Supreme Court later affirmed this denial. See Appel II, 547 Pa. 171, 689 A.2d 891. Appel then filed a Petition for a Writ of Habeas Corpus pursuant to 28

U.S.C. S 2254 in the United States District Court for the Eastern District of Pennsylvania. The District Court granted the writ on May 21, 1999, but stayed the execution of the writ for 180 days in order to permit the Commonwealth to provide Appel a new trial. See Appel v. Hor n, No. 97-2809 (E.D. Pa. May 21, 1999) (hereafter "District Court Memorandum").3 The Commonwealth filed a timely appeal.

II.

DISCUSSION

A. Standard of Review

The Commonwealth argues that the District Court erred in failing to apply the standards contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Because Appel's habeas petition was filed after April 24, 1996, the effective date of AEDPA, AEDPA applies here.

AEDPA precludes habeas relief on a"claim that was adjudicated on the merits in State court proceedings" unless the petitioner has shown that the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supr eme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court pr oceeding." 28 U.S.C. S 2254(d). Factual issues that the state court determined are presumed to be corr ect, and the burden is on the petitioner to rebut that presumption by clear and convincing evidence. See 28 U.S.C. S 2254(e)(1). AEDPA "increases the deference federal courts must give to the factual findings and legal determinations of the state courts." Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000), cert. denied, 2001 WL 185125 (U.S. April 16, 2001).

_____

3. The District Court's opinion is unpublished and appears in App. I as Exhibit A. It will be referred to her e as "District Court Memorandum" with the appropriate page citation.

The Supreme Court recently clarified how these standards should be interpreted in its decision in Williams v. Taylor, 529 U.S. 362 (2000), wher e it considered a federal habeas claim in which petitioner Williams contended that he was denied effective assistance of counsel. With respect to legal deter minations made by the state court, the Williams Court explained that the "contrary to" and "unreasonable application" clauses in S 2254(d)(1) should be viewed independently. Id. at 405. A state court decision will be "contrary to" Supreme Court precedent if it is "substantially different from the relevant precedent." Id. A state court decision will be an "unreasonable application" if (1) "the state court identifies the corr ect governing legal rule from [the] Court's cases but unr easonably applies it to the facts of the particular state prisoner's case"; or (2) "the state court either unreasonably extends a legal principle from our precedent to a new context wher e it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. The Court held that Williams was entitled to habeas r elief because the state supreme court's decision was both "contrary to" and involved an "unreasonable application" of federal law clearly established in Strickland v. Washington , 466 U.S. 668 (1984). Much of the inquiry since Williams has focused on the application of one or both of these clauses. See, e.g., Werts, 228 F.3d 178.

However, by its own terms S 2254(d) applies only to claims already "adjudicated on the merits in State court proceedings." It follows that when, although properly preserved by the defendant, the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards pr ovided by AEDPA and explained in Williams do not apply. See Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir . 1999), aff 'd, 528 U.S. 225 (2000) ("When a petitioner has pr operly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however , our review of questions of law and mixed questions of law and fact is de novo."); Fisher v. Texas, 169 F .3d 295, 300 (5th Cir. 1999) (declining to apply S 2254(d)'s deferential standards because the Texas state courts had dismissed petitioner's claim on procedural grounds rather than on its merits);

9

Moore v. Parke, 148 F.3d 705, 708 (7th Cir. 1998) ("A prerequisite for applying [S 2254(d)] is that the state court adjudicated the issue before us on the merits.").

In such an instance, the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA. See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir . 1999). However, the state court's factual determinations ar e still presumed to be correct, rebuttable upon a showing of clear and convincing evidence. See 28 U.S.C. S 2254(e)(1).

The District Court recognized that AEDP A was applicable to Appel's habeas petition. Because the District Court's opinion was filed before the Supreme Court's opinion in Williams v. Taylor, the District Court proceeded under the interpretation of AEDPA that this court applied in its decision in Matteo v. Superintendent, SCI Albion , 171 F.3d 877 (3d Cir. 1999) (en banc). Nevertheless, nothing in Williams would change the District Court's determination that the AEDPA deference standard is inapplicable in Appel's habeas proceeding.

The District Court first determined that"the claim at the center of Appel's habeas petition, [i.e.] that he was constructively denied his Sixth Amendment right to the assistance of counsel during the time before the trial court accepted his waiver of counsel," was presented to the Pennsylvania Supreme Court and therefor e Appel exhausted his state court remedies. District Court Memorandum at 12. In fact, the Pennsylvania Supr eme Court expressly recognized that it must r esolve "[w]hether Appel is entitled to relief because he was denied assistance of counsel during the original trial court pr oceedings." Appel II, 547 Pa. at 184, 689 A.2d at 897. However, the Pennsylvania Supreme Court's analysis of this claim always characterized the claim as alleging ineffective assistance of counsel, and not constructive denial of counsel. The two claims, of course, are different. The claim of ineffective assistance of counsel must be evaluated from a federal constitutional basis under the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984). The constructive denial of counsel analysis, on the other hand,

10

stems from the Supreme Court's decision in United States v. Cronic, 466 U.S. 648 (1984).

In rejecting Appel's PCRA petition, the Pennsylvania Supreme Court described Appel's claim as one for ineffective assistance of counsel asserting that his "stand-by counsel were deficient because they: (1) did not investigate Appel's background; (2) spoke to no one who knew Appel; (3) did not obtain records about Appel; and (4) provided no information about Appel's alleged history of mental illness to the court-appointed psychiatric experts or to the court itself." Appel II, 547 Pa. at 198, 689 A.2d at 904. Then, the Court, relying on its pr ecedent in Commonwealth v. Griffin, 537 Pa. 447, 644 A.2d 1167 (1994), held that "claims of ineffective assistance of counsel are not cognizable during post-trial pr oceedings, when the defendant has previously insisted on repr esenting himself." Appel II, 547 Pa. at 198, 689 A.2d at 904 (emphasis added).

Nevertheless, the Court considered the substance of Appel's claim and rejected "Appel's ar gument that stand-by counsel must ignore the pleadings of their criminal defendant clients and undertake an exhaustive survey of the client's personal background in an attempt to establish incompetency." Id. at 202, 689 A.2d at 906. The Court accordingly concluded that Appel's standby counsel did not act unreasonably in respecting their client's wishes not to investigate his competency.

The District Court recognized that because the Pennsylvania Supreme Court recharacterized Appel's claim as arguing that "stand-by counsel" wer e ineffective and consistently referred to Kraft and Cr owe as only "stand-by counsel," it failed to adjudicate Appel's denial of counsel claim on the merits. See District Court Memorandum at 14-15. As the District Court stated, "[t]he state courts thus condoned Kraft's and Crowe's conduct based on the trial court's post-hoc finding that Appel was competent, when the relevant questions were whether they were counsel or stand-by counsel prior to June 20, 1986, and what they were obligated to do when faced with a potentially incompetent client on June 12, 1986, who might be unable to make the rational, strategic choices which Pennsylvania law accords to criminal defendants (including waiver of

11

counsel), and for whom a competency hearing had been scheduled by the trial judge for June 20, 1986." Id. at 15-16.

Our reading of the Pennsylvania Supreme Court's opinion leads us to agree with the District Court that the Pennsylvania Supreme Court "never consider ed Appel's claim that the actions of Kraft and Crowe fr om June 12, 1986, to June 20, 1986, constituted a constructive denial of counsel." Id. at 16. As the District Court stated, the Pennsylvania Supreme Court "failed to addr ess Appel's arguments that Kraft and Crowe wer e actually his counsel during the time leading up to the trial court's competency hearing." Id. While the allegations that Crowe and Kraft failed to investigate Appel's background ar e relevant to Appel's habeas claim before us, their r elevancy is not in the context of ineffective assistance of counsel, as the Pennsylvania Supreme Court treated them, but in the constructive denial of counsel, the issue that the state courts did not consider. It is informative that throughout its opinion, the Pennsylvania Supreme Court failed to cite to Cronic, the relevant Supreme Court case on constructive denial of counsel.

It follows, as the District Court held, that "AEDPA's standards are inapplicable to Appel's constructive denial of counsel claim, and this court must examine, without `special heed to the underlying state court decision,' whether Appel was constructively denied his Sixth Amendment right to counsel during the time befor e the trial court accepted his waiver of counsel." District Court Memorandum at 17. Therefore, the District Court did not err by conducting a de novo review of this claim. We will conduct a plenary review over questions of law and mixed questions of law and fact.4

_____

4. We take note that the District Court held in the alternative that Appel's claim could satisfy the requirements of S 2254(d), because the state court decision was an "unreasonable application" of clearly established federal law as determined by the Supreme Court. See District Court Memorandum at 17 n.15. While this analysis exemplifies the District Court's thoroughness, we see no r eason to consider it as we have already held that that clause of S 2254(d) does not apply here.

12

B. The Issue Before the Habeas Court

The Commonwealth argues that the District Court erred
in analyzing the merits of Appel's claim under the Supreme
Court's decision in Cronic, and contends that it should
instead have analyzed Appel's claim pursuant to Strickland.
In Cronic, counsel representing the defendant indicted on
federal mail fraud charges withdrew shortly before trial and
the district court appointed as a substitute a young real
estate lawyer. However, the court allowed him only 25 days
to prepare for trial even though it had taken the
government four and a half years to investigate and review
thousands of documents. It was a difficult case for the
defense because two co-defendants agreed to testify for the
government and their testimony proved that Cronic had
conceived and directed the entire "check kiting" scheme.
Cronic did not testify so as to avoid impeachment with a
prior conviction nor did he put on a defense, but his
counsel did cross-examine the government's witnesses.
Cronic was convicted on 11 of the 13 counts and sentenced
to 25 years imprisonment. The court of appeals r eversed
because it inferred that Cronic's Sixth Amendment right to
the effective assistance of counsel had been violated. See
Cronic, 466 U.S. at 649-52.

Although the Supreme Court did not agree that the
circumstances in Cronic justified the inference drawn by
the court of appeals, it is the Court's discussion of the
circumstances in which there would be such a Sixth
Amendment violation that stands at the center of the Cronic
doctrine. The Court began its discussion with the statement
that "[a]n accused's right to be repr esented by counsel is a
fundamental component of our criminal justice system," id.
at 653, and quickly explained this meant "the right to the
effective assistance of counsel," id.  at 654. At stake is the
defendant's right to assistance "for his defence." Id. (quoting
U.S. Const. amend. VI). "If no actual `Assistance' `for' the
accused's `defence' is provided, then the constitutional
guarantee has been violated." Id. (quoting U.S. Const.
amend VI). Further, "a trial is unfair if the accused is
denied counsel at a critical stage of his trial." Id. at 659.

In one of the key passages, the Court stated that"[t]he
right to the effective assistance of counsel is . . . the right

13

of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." Id. at 656. No specific showing of prejudice is r equired when counsel entirely fails to subject the prosecution's case to such testing. In such an event, ineffectiveness of counsel is "properly presumed without inquiry into actual performance at trial." Id. at 661.

Courts have found constructive denial of the right to counsel under Cronic where counsel offered no assistance to defendant at plea proceedings, see Childress v. Johnson, 103 F.3d 1221, 1231 (5th Cir. 1997); acted as a mere spectator at defendant's sentencing, see Tucker v. Day, 969 F.2d 155, 159 (5th Cir. 1992); failed to object to a directed verdict against the defendant, see Har ding v. Davis, 878 F.2d 1341, 1345 (11th Cir. 1989); and deliberately stressed the brutality of his client's crime, see Osbor n v. Shillinger, 861 F.2d 612, 628-29 (10th Cir. 1988).

The Commonwealth contended at oral argument that Cronic is inapplicable because Appel had declined to be represented by counsel and invoked his right to represent himself under Faretta v. California , 422 U.S. 806 (1975). In Faretta, the Supreme Court examined the historical underpinnings of the right to self-repr esentation, and ruled that a court cannot "compel a defendant to accept a lawyer he does not want" if he voluntarily and intelligently chooses to represent himself. Id. at 833. The Court concluded that a defendant's right to self-representation is protected in the Sixth Amendment.

We are not unaware that a trial court may believe that it is caught between the Scylla and Charybdis of Cr onic and Faretta. We acknowledge that the court must sometimes walk a narrow line between the Sixth Amendment requirement that a defendant be pr ovided with counsel and its requirement that a defendant be given the right of self-representation. This is not such a case because the issue is focused on the short period of time befor e the trial court accepted Appel's waiver of counsel. It is well-established that a waiver of the right to counsel is not ef fective until the court accepts that it is made voluntarily, knowingly, and intelligently. See Brewer v. Williams, 430 U.S. 387, 403 (1977); see also Faretta, 422 U.S. at 835 (noting that the

14

defendant "was voluntarily exercising his informed free will" to decline representation by counsel); Johnson v. Zerbst, 304 U.S. 458, 465 (1938) (requiring a waiver of counsel to be "an intelligent and competent waiver by the accused").

Moreover, a defendant's waiver cannot be knowing or intelligent unless the defendant is competent. See Pate v. Robinson, 383 U.S. 375, 384 (1966). Pennsylvania's own procedures provide that "[w]hen the defendant seeks to waive the right to counsel . . . , the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel." Pa. R. Crim. P. 318(c) (renumbered Rule 121(C)). It follows that Faretta does not displace Appel's right to effective assistance of counsel under the Sixth Amendment in the period before he was deemed competent to waive counsel on June 20, 1986.

Kraft and Crowe were Appel's counsel between June 10, 1986 and June 20, 1986. They were assigned to be Appel's attorneys on June 10, 1986 and entered appearances on his behalf. Under the Pennsylvania Rules of Criminal Procedure, once an attorney has entered an appearance with the court, "[c]ounsel for a defendant may not withdraw his or her appearance except by leave of court." Pa. R. Crim. P. 302(b) (renumbered Rule 120(C) and amended March 1, 2000, effective April 1, 2001). Moreover, as the District Court recognized, Kraft and Cr owe were not standby counsel for Appel until June 20, 1986, when the trial court accepted Appel's waiver. See District Court Memorandum at 26; see also Pa. R. Crim P . 318(d) (allowing appointment of standby counsel after the court accepts a defendant's waiver of counsel) (renumbered Rule 121(D)). The Commonwealth's reliance on Far etta does not relieve us of our obligation to examine whether Appel's constitutional rights were properly pr eserved before the trial court accepted his waiver.

The Commonwealth next argues that the District Court should have examined Appel's claim under Strickland's ineffective assistance of counsel analysis rather than the constructive denial of counsel analysis of Cr onic. It contends that Appel cannot prove that his trial counsel's

15

alleged failures prejudiced the defendant, as required by Strickland. See Br. of Appellant at 47-52.

Strickland, decided on the same day as Cronic, held that the Sixth Amendment right to counsel was violated if (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the "deficiencies in counsel's performance [were] prejudicial to the defense." Strickland, 466 U.S. at 688-92. The Court further stated that "[j]udicial scrutiny of counsel's performance must be highly deferential . . . that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (citation and quotation omitted).

Both Strickland and Cronic address the adequacy of counsel's performance. And it is indeed true that the majority of Sixth Amendment right to counsel cases are, and should be, analyzed under the ineffective assistance standard of Strickland which requires a showing of prejudice. See Childress, 103 F .3d at 1228 (noting that Strickland governs most right to counsel claims); United States v. Gambino, 788 F.2d 938, 950 n.17 (3d Cir. 1986) (noting that the Cronic analysis should be used for "particularly egregious circumstances"). The District Court similarly recognized that Cronic should be applied "sparingly." District Court Memorandum at 22 (quotation omitted).

The District Court was acutely aware of the distinction. The court, however, stated that "Appel claims that he was denied counsel -- not that he received inef fective assistance of counsel." Id. at 20 (capitalization omitted).5 Accordingly, we will limit our consideration to the issue on which the District Court focused -- whether Appel was constructively denied counsel in the period before the trial court accepted his waiver of counsel.

_____

5. Appel argues that, in the alternative, we should affirm the District Court's order because he was denied his Sixth Amendment right to effective assistance of counsel. However , it appears that argument was not advanced in the District Court and we see no r eason to consider it here.

16

C. Constructive Denial of Appel's Right to Counsel

We turn finally to review the merits of the basis for the District Court's grant of the writ of habeas corpus. The District Court granted Appel's petition for habeas corpus based on its conclusion that Appel's Sixth Amendment right to counsel was constructively denied during the period from June 10, 1986 (when counsel was appointed) to June 20, 1986 (when the trial court accepted his waiver of counsel and appointed Kraft and Crowe as standby counsel).

The District Court viewed the Cronic precedent as applying "when counsel utterly failed to function as counsel by providing no assistance to the defendant." Id. at 23. It noted that other courts of appeals have applied Cronic in accordance with these principles, citing, inter alia, Rickman v. Bell, 131 F.3d 1150, 1157 (6th Cir . 1997) (applying Cronic when counsel "combined a total failure to actively advocate his client's cause with repeated expr essions of contempt for his client for his alleged actions"); Childress, 103 F.3d at 1231 (applying Cronic when counsel offered no advice to defendant at a plea hearing and conducted no investigation to assist the defendant); cf. T ippins v. Walker, 77 F.3d 682, 686–87 (2d Cir. 1996) (pr esuming prejudice when defense counsel slept through a substantial portion of trial, thereby suspending the adversarial natur e of the process).

Appel's competency hearing was a critical stage of his trial. The District Court noted that Kraft and Cr owe "had the obligation to act as counsel at Appel's competency hearing by subjecting the state's evidence of competency to `meaningful adversarial testing.' " District Court Memorandum at 27 (quoting Cronic, 466 U.S. at 659). And, in the dispositive finding, the District Court found "[t]he record is undisputed that they failed to do so; they did not investigate his background, speak to his family or friends, or obtain his health or employment recor ds." Id. We have examined the record and see no reason to disagree. The Commonwealth did not disagree in the District Court but stated at oral argument that Kraft and Cr owe did speak with Appel's parents between June 10 and June 20, 1986. However, both Kraft and Crowe testified that these

conversations concerned paying bills and handling property, not Appel's competency.

Kraft and Crowe testified repeatedly at the state PCRA hearing that they believed they were not Appel's counsel in the short period before June 20, 1986. That r epetition prompted the court to remark during Kraft's testimony:

> THE COURT: Well, I think Attorney Kraft has made clear that she was not authorized as Mr. Appel's attorney throughout this proceeding . . . There is no need each time the question is asked to remind us that you were not his attorney, we understand.

App. II at 114.

We see nothing in the record that disputes the following facts set forth in Appel's brief on appeal:

> Believing that they were never Mr. Appel's counsel, the attorneys never even offered to investigate and never did any investigation of any type, r egarding the offense or Mr. Appel's competency: they never spoke to anyone or obtained any records about Mr . Appel's background and history; they never asked anyone in Mr. Appel's family about the offense or Mr. Appel's background, although they knew how to contact Mr. Appel's parents; they never asked Mr. Appel's girlfriend, Yvonne Duggan, about the offense or Mr . Appel's background, although they knew how to contact her; they never spoke to any of Mr. Appel's co-workers, although they knew where he had worked; they never sought or obtained Mr. Appel's military r ecords, although they knew he had been in the military and had had problems there; they never looked into the codefendant's views about Mr. Appel's mental state; they never sought or obtained Mr. Appel's employment records, although they knew that he had had problems in his employment at the Lehigh County Jail; they never sought or obtained from the prosecution any police reports prior to the June 20, 1986 competency decision; they never spoke to the police investigator about what he had learned about Mr. Appel's mental state. . . .

18

In short, attorneys Kraft and Crowe, because they did not believe they were counsel, never conducted any investigation; did not provide Dr. Schwartz or the court with any information about Mr. Appel; and did not attempt to litigate the competency determination in any way. Attorneys Kraft and Crowe testified that, instead of investigation or acting as counsel in the case, they did "personal things for Mr. Appel" such as transferring car titles and making sure bills had been paid. . . . They did nothing to investigate or pr epare for the competency determination. They did not subject the crucial competency determination in this capital case to any adversarial testing.

Br. of Appellee at 8-9 (emphasis in original).

It follows that there is ample support for the District Court's conclusion that Kraft and Crowe "abandoned their duty to both the court and their client when they decided not to conduct any investigation" on Appel's competency. District Court Memorandum at 27.

The Commonwealth argues that the District Court misapplied the law by relying on Hull v. Fr eeman, 932 F.2d 159 (3d Cir. 1991). In Hull, we held that an attorney abdicated his professional obligations by failing to contest his client's competency to stand trial when ther e were psychiatric reports of his client's incompetency. Notably, we were analyzing Hull's claims under the Strickland test for ineffective assistance of counsel. See id. at 167-70. Nevertheless, the District Court here cited to Hull in support of its ruling that Kraft and Crowe failed to meet their obligations as Appel's counsel, amounting to a violation of Cronic. See District Court Memorandum at 27-28. Contrary to the Commonwealth's protestations, we find Hull instructive on this point. Though Kraft and Crowe did not possess the same type of evidence of their client's incompetency as did the defense counsel in Hull , their failure to make any investigation clearly pr evented them from discovering that such information did exist.

At oral argument, the Commonwealth argued that an affirmance of the District Court's ruling that Appel was denied the assistance of counsel would encourage a spate

19

of similar claims by other defendants. We believe that scenario is unlikely. Counsel are not apt to abdicate their responsibility to conduct some preliminary investigation even when a defendant wishes to plead guilty, as the defendant's background may provide a basis to argue mitigating circumstances. Here, even a minimal inquiry would have disclosed from Appel's mother his strange behavior, his staring, suicide attempts, and prior incident of babbling incoherently on a staircase when he worked at the Lehigh County Jail; inquiry of his girlfriend would have disclosed his bizarre behavior, thr eat of suicide, belief that he was an agent for military intelligence; inquiry into Appel's employment at the Lehigh County Jail also would have uncovered Appel's history of bizarr e behavior, such as mumbling incoherently to a radio in a stairwell, claims that he had been involved in top secret spying operations, his appearance of being delusional and of having mental problems. See Br. of Appellee at 12-18.

We are not suggesting that this evidence shows that Appel is or was incompetent on June 20, 1986. However, because counsel failed to make even a minimal inquiry they did not ascertain these background facts or pr esent them to Dr. Schwartz or the court. Indeed, Dr . Schwartz testified at the PCRA hearing that had she known about Appel's bizarre behavior, she would have made further inquiry. See PCRA Tr. 5/11/95, at 111-14 (testimony of Dr. Janet Schwartz). In the judicial experience of each member of this panel, none of which has less than 20 years on the bench, such default by counsel who do not believe that they are counsel has rarely, if ever, occurr ed. Therefore, we reject the Commonwealth's suggestion that we are opening a Pandora's Box.

Nor do we believe it would impose an undue bur den on defense counsel to require some investigation into the defendant's competency, especially in a capital mur der case where the trial court has ordered a competency evaluation and hearing. As the District Court noted, defense counsel is not obligated "to develop frivolous arguments in favor of incompetency." District Court Memorandum at 30. But under the circumstances in this case, Appel's counsel should have investigated, advocated, or otherwise acted to

20

ensure that there was "meaningful adversarial testing." Cronic, 466 U.S. at 659. In the wor ds of the District Court, Appel's counsel was "only required to act as an advocate -- to conduct a meaningful investigation into [the] defendant's competency and to present information gleaned from that investigation at [the] competency hearing, and to the evaluating psychiatrist, if the information suggests an alternative version of the truth about the defendant's competency." District Court Memorandum at 30.

Therefore, we agree with the District Court's determination that Kraft and Crowe's failure to act in the period between June 10, 1986 and June 20, 1986, when the District Court held Appel competent to waive counsel, constituted a constructive denial of Appel's Sixth Amendment right to counsel.

D. Remedy

Having found Appel's Sixth Amendment rights violated, the District Court granted a writ of habeas corpus and vacated Appel's conviction and sentence but allowed the government to provide Appel with a new trial within 180 days of the order. The Commonwealth ar gues on appeal that the appropriate remedy for a Cr onic violation would be to order a retrospective competency hearing to determine whether Appel was indeed competent to waive counsel in 1986. However, the Commonwealth has been unable to cite to any case that would support ordering a r etrospective competency hearing instead of vacating Appel's conviction.

In contrast, we have previously held that r etrospective competency hearings are not an appropriate remedy for Sixth Amendment violations. In Henderson v. Frank, 155 F.3d 159 (3d Cir. 1998), we held that the defendant's lack of counsel at a pretrial suppression hearing violated his Sixth Amendment rights, a violation that could not"be remedied by merely ordering a new suppression hearing." Id. at 170. Citing Cronic, we stated that the violation "contaminated the entire criminal pr oceeding." Id. at 171. Similarly, we noted in Hull that the appr opriate remedy for ineffective assistance of counsel at a competency hearing was to vacate the guilty plea, not to order a new competency hearing. See Hull, 932 F.2d at 169.

21

Moreover, the Supreme Court has disapproved of retrospective hearings on competency. In Pate v. Robinson, 383 U.S. 375 (1966), where the habeas petitioner did not receive a constitutionally adequate competency hearing, the Court stated: "It has been pressed upon us that it would be sufficient for the state court to hold a limited hearing as to [the petitioner's] mental competence at the time he was tried in 1959. If he were found competent, the judgment against him would stand. But we have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial." Id. at 387.

The Supreme Court has consistently held ther e should be a new trial if there has been some constitutional defect regarding the defendant's competency. See, e.g., Drope v. Missouri, 420 U.S. 162, 183 (1975) (granting a new trial when trial court refused to conduct a hearing to determine the defendant's competence to stand trial); Pate , 383 U.S. at 386–87 (ordering a new trial for a defendant who did not receive an adequate competency hearing); Dusky v. United States, 362 U.S. 402, 403 (1960) (per curiam) (vacating the conviction after holding that there wer e insufficient facts to support the finding that petitioner was competent to stand trial and recognizing the "difficulties of retrospectively determining the petitioner's competency as of more than a year ago").

The right to assistance of counsel is "one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty." Johnson v. Zerbst, 304 U.S. 458, 462 (1938). It follows that we agree with the District Court that "[t]he unconstitutional deprivation of counsel at Appel's competency hearing infected all later stages of his prosecution and rendered all subsequent proceedings against him void." District Court Memorandum at 33. Following the trial court's acceptance of Appel's waiver of counsel, Appel was without"the guiding hand of counsel at every later stage of the pr oceedings which eventually lead [sic] to his death sentence." Id. at 34. The Supreme Court and Third Circuit precedent cited above supports the District Court's conclusion that "[t]he appropriate remedy for this constitutional violation . . . is, therefore, to vacate Appel's conviction and sentence and to award him a new trial." Id.

22

III.

CONCLUSION

We will therefore affirm not only the District Court's conclusion that Appel's Sixth Amendment right was violated but also its determination that the appropriate remedy is to grant a writ of habeas corpus vacating Appel's conviction and sentence and to allow the Commonwealth to provide Appel with a new trial.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit